**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA DIVISION**

| | | |
|---|---|---|
| TREVER KYLE JESTER<br>ERIKA SPRABARY<br><br>Plaintiff's<br><br>VS.<br><br>JUSTIN PAUL<br>WENDY WALKER<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | JUDGE:<br>CASE: 4:24-CV-000283 |

**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW the Petitioners, Trever Kyle Jester, Erika Sprabary, moves the Court for declaratory and injunctive relief challenging the State Court decisions of guardianships PG-2020-38, PG-2020-557 and PG-2022-640 involving an Indian child pursuant to the Indian Child Welfare Act.

**PARTIES**

Father - Trever Kyle Jester, Plaintiff and Petitioner, resident of Argyle, Texas since 2017 until present.

Maternal Aunt- Erika Lynette Barnard-Sprabary, Plaintiffs and Petitioners, resident of Hickory Creek, Texas since 2017 until present.

Justin Paul and Wendy Walker, resident of Tulsa, Oklahoma.

## JURISDICTION AND VENUE

1. This is an action for declaratory judgment pursuant to 28 U.S.C.A. § 2201 to determine an actual controversy between the parties.

2. Because the plaintiff's cause of action arises under the laws and regulations of the United States, specifically 25 U.S.C.A. § 1911.

3. This Court has original jurisdiction under the authority of 28 U.S.C.A. §§ 1331 and 1362.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b), as Defendant s resided in Tulsa County, Oklahoma.

5. Plaintiff submits to this court's jurisdiction for the limited and sole purpose of securing the relief prayed for herein.

**INTRODUCTION**

The State of Texas appointed Alexandra Hayden Paul the Sole Permanent Conservator of T.A.J. , the minor subject to this action, on 11/12/2019. On 7/13/2021, Alexandra executed a witnessed written declaration in her home state of Texas designating her mother, sisters or step brother as guardians for her daughter in the event of her death. In January of 2022, Alexandra and her daughter, T.A.J. moved from her home in Texas to Ada Oklahoma with the help of the Chickasaws. Tragically Alexandra died 8 months later on August 10, 2022. Even more tragic is T.A.J. was alone with her deceased mother for approximately 2.5 days before being discovered. T.A.J. attempted to contact her Grandmother, Kathleen Lieberman and her Aunt, Erika Sprabary before reaching Jeff Walker, the defendants ex-husband, whom in turn notified Wendy Walker at around 8:30 am. on August 12, 2022. Wendy Walker then informed her live in boyfriend, Justin Paul, the half-brother of Alexandra, and three time felon without a driver's license to drive to Ada and pick up T.A.J.. During Justin Paul's approximate 132 mile commute, he and Wendy refrained from notifying any family including Alexandras mother and father.. When Justin Paul arrived at Alexandras home, he falsely stated to law enforcement they he had no way of contacting Alexandras next of kin, among many other falsehoods and omissions. The Deputy Sherrif released T.A.J. to Justin Paul due to the false information Justin gave him. Justin then transported T.A.J. off the reservation to his home in Tulsa despite not having a driver's license. After the defendants secured physical possession of T.A.J, they notified Erika Sprabary at 4:09 pm that her sister, Alexandra passed away. He gave Erika minimal and inaccurate information of what had occurred then tasked Erika with notifying Alexandras mother and sister. The defendants detained and isolated T.A.J. in Tulsa, Oklahoma and refused to return her or even let

her see her paternal or maternal family. Erika Sprabary and Kathleen Lieberman then contacted the Tribal Court and Indian Child Welfare as Deputy Young advised to remedy the situation but was told we had to go to Court to get her back, despite the criminal manner the defendants obtained her. On August 17th, 2022, Wendy Walker whom is of no relation to the child by blood or marriage petitioned for an emergency guardianship without notice on 8/17/2022, stating she was the child's only family and that the child would be neglected if she was not awarded the emergency guardianship. She falsely stated on multiple documents, including the Uniform Child Custody Jurisdiction Enforcement Act affidavit that T.A.J. resided with her the last five years. Wendy Walker also omitted all family information and the Texas Case that made the initial child custody determination and had exclusive, continuing jurisdiction. This contradicted her first UCCJEA in 2020 that listed the addresses of Erika Sprabary and Brittany Jester, however omitted Mark and Kathleen Lieberman, T.A.J.'s maternal grandparents and the Texas Case. (exhibit" " - UCCJEA 2020 and 2022) . The Tulsa District Court did not validate the instruments in which Wendy nominated herself and appointed Wendy Walker a "special" guardianship and set a hearing for 9/15/2022. No one, including the father were served proper notice.

On August 30th, Charles Stanton and Erika Sprabary filed a petition in the Chickasaw Tribal Court for an emergency guardianship. The evidence presented in the Tribal Court came from Alexandras own physical file she prepared and safeguarded at her home in Texas she called "in case they try to take her again". Included was the domestic violence, verbal/emotional abuse and dog mauling that Alexandra and T.A.J. were subjected to while staying in the defendants home for two months.

After presenting the evidence at the hearing on 9/13/2022, the Tribal court appointed Stanton and Erika Sprabary emergency guardians of T.A.J. and issued a Pickup Order. They were advised by their attorney to execute the Pickup order the next day at T.A.J.s school and have an officer accompany them. On 9/14/2022, Stanton and Erika Sprabary called the appropriate law enforcement agency and an officer was sent to assist us. The Officer then spoke to the Schools Administration Office to execute the Pickup Order but the defendants attorney advised the school to disobey the order and informed the officer of the hearing that was scheduled the next day. Upon this discovery, both T.A.J.s paternal and maternal families made arrangement to stay the night in Tulsa and had to find an attorney that would represent us with less than a days' notice. We arrived at the Court the next day on 9/15/2022 to inform the Tulsa District court of the Tribal courts appointment on 9/13/2022 and hearing set for 9/22/2022. Despite the Tulsa District Court not having jurisdiction until after receipt of service to the proper parties, pursuant to O.S. 113-, The Tulsa district court ignored the tribal courts emergency order and ICWA by holding the proceeding without notice to the Father or Tribe and ordered a three month continuance and not returning the child.

This will mark Wendy Walkers forth attempt to secure guardianship of T.A.J. deceitfully under false pretenses through the Tulsa District Court. Each attempt, petitioned on a purportedly "emergency" basis to avoid detection of her family demonstrates a clear pattern of manipulating the legal process. The instruments in which the defendants nominated themselves, each time, contained numerous fabrications and withheld crucial information about the minor's living situation, familial relationships and pertinent Texas case. The defendants previous attempts to secure a guardianship over T.A.J. and aiding the Tulsa District Court to usurp jurisdiction from

the state of Texas (two months after they made the initial custody determination on 11-12-2019, ultimately resulted with in the minor child being rightfully returned to her mother and her homestate of Texas upon the Tulsa District Courts finding that the allegations of Wendy Walker were false and that "no emergency existed" and ICWA violations. Alex and child remained at home in Texas until 8 months before her untimely death when Alex decided to move to Ada, with the help Chickasaws but maintained her residence and state benefits in Texas. It was then that she extended grace to Wendy Walker out of compassion for her diagnosis of breast cancer. Alexandra informed the defendants of the "protections" she had in place to ensure they could not take her child again. Alexandra cautiously allowed the defendants to visit with T.A.J. with the condition they sign a document stating the specifics of each visit and the return date. Even so, Alexandra confided in several family members and friends just days after allowing the defendants back into her life that she made a huge mistake, however did not completely cut of visitation until 23 weeks later on June 4, 2022. Ironically, it was only 23 weeks after the defendants met the child for the first time when she was nearly two, that they kidnapped T.A.J. out of her out of her crib while her mother slept in the very next room, then drove around for hours to avoid the "cops".

Likewise, Alexandra allowing the defendants back into her life for a mere 23 weeks was all it took for the defendants to feel entitled to take her daughter by exploit her. First when she was in recovery and vulnerable and then upon her death. Another act that displays their unsuitability as guardians is the fact Wendy Walker did not bother to drive to Ada to comfort T.A.J. after the trauma of losing her mother. Then concealed Alexandras death from her own mother, not only robbing her of her rightful place to say goodbye to her daughter but depriving T.A.J. of her

Grandmother that most certainly would have drove there to comfort her Granddaughter. Instead, Wendy gave no thought to have Justin Paul illegally drive a four year old 132 miles to Tulsa. This not only violated the law but also demonstrated a blatant disregard for Alexandras legal authority and T.A.J.s safety and emotional well-being. The defendants actions have been for their own benefit rather than T.A.J.s best interest.

The defendants simply have no claim or right to the child and have obtained her through fraud and deception. Only individuals aware of their lack of legitimate claim or right to a child would resort to such extreme and criminal measures as, it was there only way to obtain the physical possession of T.A.J and to gain a legal advantage.

The defendants, Justin Paul and Wendy Walker, have unjustifiably and cruelly deprived T.A.J. of any visitation with her paternal and maternal families with exception of a 2 days visit on September 4, 2022 in which T.A.J. ran from the front door upon seeing Wendy and Justin behind it, then hid under Erikas bed crying and saying she didn't want to go and wanted to stay with us. The defendants demonstrated the same cruelty to T.A.J. and her mother when she was alive when they deceitfully went against Court orders and withheld T.A.J. from her own mother that she loved dearly.

The defendants egregious actions have had a devasting impact on our families and most assuredly, T.A.J.

There is a clear adverse interest at play here.

deprived T.A.J. from her maternal and paternal families, having a devasting impact. They have attempted to severe her familial ties and break up of her Indian family, which are integral to TAJ's identity as a Chickasaw child.

for their own benefit.

The defendants' fraudulent actions have forced us to incur substantial legal fees to address the wrongful guardianship and to ensure that my granddaughter's best interests are protected. These expenses have placed a significant financial and emotional burden on us, directly resulting from the defendants' misconduct and fraudulent actions.

In light of these circumstances, I respectfully request the court to:

Consider the defendants' criminal conduct and order the defendants to reimburse the attorney fees we have incurred due to their fraudulent actions.

**FACTS**

1. The child subject to this action, T.A.J, is an "Indian child" as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(4), in that the child is under age eighteen, born in 201, and is a member of the Chickasaw Nation.

2. Trever Kyle Jester is the Natural “Indian” Father of the T.A.J., the child’s only surviving parent whom child lived with and custody has been removed. (Exhibit 2 - Paternity)

3. The Chickasaw Tribe is an Indian tribe as defined by the Indian Child Welfare Act, 25 U.S.C. § 1903(8), and this fact is entitled to judicial notice by virtue of publication in the Federal Register 86 FR 7554.

**Claim One - Cornam Non-Judius**

Lack of Jurisdiction to determine guardianship matters - Coram of Non Judius

> **§30-1-113 B**. After the service of notice in a proceeding seeking the appointment of a guardian or other order, in subsequent proceedings pertaining to the guardianship of a ward and until termination of the proceeding, the court in which the petition is filed has exclusive jurisdiction to determine: 1. The need for a guardian or other order; and 2. How the estate of the ward shall be managed, expended, or distributed to or for the use of the ward or the dependents of the ward.

> ICWA § 1911. Indian tribe jurisdiction over Indian child custody proceedings.

> (a) Exclusive jurisdiction. An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

Improper notice pursuant to ICWA 1912 a. "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe".

Proceedings held before notice.

**Claim Two - Child Stealing through fraud**

Defendants have a pattern of obtaining physical possession of minor child

UCCJEA - Defendants falsely stating T.A.J. resided at their address in Tulsa, Oklahoma for the last 5 years, directly contradicting themselves in their 2020 affidavit listing several addresses that they obtained from the Texas case (4-9-2018 - 11-12-2019).

**Claim Four - ICWA Violations**

ICWA 1911

**Claim Five -No Due Process**

**No notice**

**proceedings before notice.**

§ 1914. [FN4] The guardian ad litem relies on this provision to argue that S.M. has a right under federal law to be heard on the defective notice issue even though it was not raised below."

**Claim Six - Bias and Uniform application of Rules**

§30-2-101. 4. Except in the case of an emergency guardianship placement, the court shall receive a background check for a prospective guardian and all other household members

eighteen (18) years of age and older.

Tulsa District Rule 34

**DECLARATORY AND INJUNCTIVE RELIEF**

We seek declaratory and injunctive relief challenging the State Court decisions of guardianships PG-2020-38, PG-2020-557 and PG-2022-640 involving an Indian child pursuant to the Indian Child Welfare 1914 and Tulsa District Rule 8.2.

We seek preliminary injunction relief as we are likely to win and not doing so will cause irreparable harm and is the best interest of the public.

We seek the court to grant declaratory relief of invalidating court proceedings due to ICWA violations pursuant to 1914 and Tulsa District Rule 8.2.

We seek the court to grant me injunction relief enjoined the defendants to possess the custody of the child.

**§30-4-801. Removal of guardians.**

A guardian may be removed by the district court for any of the following causes:

1. For abuse of his fiduciary responsibility.
2. For continued failure to perform his duties.
3. For incapacity to perform his duties.
4. For gross immorality.
5. For having an interest adverse to the faithful performance of his duties.
6. If the instrument in which the person was nominated as guardian is judicially determined to be invalid.
7. In the case of guardian of the property, for insolvency.
8. When it is no longer proper that the ward should be under guardianship.

R.L. 1910, § 3337. Amended by Laws 1988, c. 329, § 118, eff. Dec. 1, 1988. Renumbered from § 18 of this title by Laws 1988, c. 329, § 134, eff. Dec. 1, 1988.

**ATTORNEY FEES, TRAVEL FEES ETC.**

§30-3-312. Jurisdiction acquired through unjustifiable conduct.

(a) If at any time a court of this state determines that it acquired jurisdiction to

appoint a guardian or issue a protective order because of unjustifiable conduct, the court may:

(1) Decline to exercise jurisdiction;

(2) Exercise jurisdiction for the limited purpose of fashioning an

appropriate remedy to ensure the health, safety, and welfare of the respondent or the protection of the respondent's property or prevent a repetition of the unjustifiable conduct, including staying the proceeding until a petition for the appointment of a guardian or issuance of a protective order is filed in a court of another state having jurisdiction; or

(3) Continue to exercise jurisdiction after considering:

(A) the extent to which the respondent and all persons required to

be notified of the proceedings have acquiesced in the exercise of the court's jurisdiction;

(B) whether it is a more appropriate forum than the court of any

other state under the factors set forth in subsection (c) of Section 11 of this act; and

(C) whether the court of any other state would have jurisdiction

under factual circumstances in substantial conformity with the jurisdictional standards of

Section 8 of this act.

(b) If a court of this state determines that it acquired jurisdiction to appoint a guardian or issue a protective order because a party seeking to invoke its jurisdiction engaged in unjustifiable conduct, it may assess against that party necessary and reasonable expenses, including attorney fees, investigative fees, court costs, communication expenses, witness fees and expenses, and travel expenses. The court may not assess fees, costs, or expenses of any kind against this state or a governmental subdivision, agency, or instrumentality of this state unless authorized by law other than this act.

Oklahoma 30 Removal of Guardians

We have included a solution of a Guardianship by Power of Attorney by the surviving parent and request that the child be returned to her rightful family.

Thank you.

/s/ Trever Kyle Jester
209 Traveller St
Hickory Creek, TX 75065
940-594-3711
everythingerika@live.com

/s/ Erika Sprabary
209 Traveller St
Hickory Creek, TX 75065
940-594-3711
everythingerika@live.com